Commonwealth *v.* Harding, Appellant.

Submitted March 19, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Henry T. McCrary, Jr.,* and *Ronald J. Brockington,* for appellant.

*Maxine J. Stotland* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., September 19, 1973:

Appellant, Warren Harding, was tried by a jury on March 27, 1972, and was found guilty on two counts of burglary and two counts of aggravated robbery. On June 28, 1972, post trial motions were denied and sentences were imposed.

The only issue argued to this Court is whether references by several Commonwealth witnesses to police photographs and color slides, used in identifying appellant, require the award of a new trial under *Commonwealth v. Allen,* 448 Pa. 177, 292 A. 2d 373 (1972), which held, *id.* at 182, 292 A. 2d at 375, that "[o]nce it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed."

The evidence in the present case was that one Rosalie McNeill had been robbed twice, once on October 30, 1970, and again on April 12, 1971; hence the two burglary counts and two robbery counts.

On the night of the October 30 robbery the police showed Mrs. McNeill "one hundred and fifty—two hundred photographs". She did not pick out any of these as a photograph of the robber. When asked whether appellant's photograph was included among the photographs shown Mrs. McNeill, the investigating detective replied, "I don't know for sure; I don't think so." The next evening the detective showed Mrs. McNeill and one Thomas Fife, a witness to the robbery, about two hundred colored slides. This occurred at the "Identifications Unit" in the Police Administration Building. Mrs. McNeill and Mr. Fife identified one of these slides— a picture of appellant—as depicting the robber.

The same detective interviewed Mrs. McNeill on the night of the April 12 robbery. When she told him "that the same guy that robbed her in October just robbed her tonight," he ordered a photograph of the slide that she had identified in October, and "[o]n the next evening, I went to her home and placed this photo among eleven other photographs of males of similar physical appearance. I placed them on a table for her and I placed a ruler along the bottom portion of the photographs, which would cover up the names of all these people in the photographs". Mrs. McNeill picked out the photograph of the slide depicting appellant. Shortly afterwards—the record is not clear just when—the detective "order[ed] more recent photos . . . and I went through the same procedure": "I took ten other photographs of males of the same physical characteristics, age, complexion. I again went over to her house, and again placed a ruler and the more recent photographs among these others. I placed a ruler across the bottom to hide the names. . . ." Mrs. McNeill "identified the newer photo of the same male [appellant]."

It is evident that from this testimony the jury "could reasonably conclude", *Commonwealth v. Allen, supra,* at 182, 292 A. 2d at 375, that appellant had a criminal record.

The Commonwealth argues that nevertheless a new trial should not be awarded because "it was appellant, not the Commonwealth, who elicited the information from which the jury *might* infer that the accused had engaged in prior criminal activity." (Commonwealth's Brief at 6.) This argument is not supported by the record. The testimony that has been quoted above was elicited by the Commonwealth on direct examination.

The Commonwealth also argues that "even if the reference to photographs is deemed to be error, it is harmless error only," citing *Commonwealth v. Robinson,* 221 Pa. Superior Ct. 167, 288 A. 2d 921 (1972).

(Commonwealth's Brief at 7.) This argument likewise is not suported by the record. Error cannot be held harmless unless it is clear beyond a reasonable doubt that it did not affect the result. *Chapman v. State of California,* 386 U.S. 18 (1967). That is not so here. It is true that Mrs. McNeill testified that at each robbery she got a good look at the robber, and that a bit less than two weeks after the April robbery she identified appellant as the robber in a line-up; and it is also true that at the trial Mrs. McNeill and Mr. Fife positively identified appellant as the robber, Mrs. McNeill's identification being particularly persuasive because, she said, during the second robbery the robber asked her, "Where the hell you got it [the money] this time?" However, a great deal of the Commonwealth's evidence concerned the photographs and slides, which reflects at least trial counsel's judgment that the evidence was essential; and the detective acknowledged that the identification of appellant by Mrs. McNeill and Mr. Fife after the October robbery was such that he "wasn't one hundred percent sure of the identification" and therefore did not obtain an arrest warrant. In addition, although this Court did say in *Commonwealth v. Robinson, supra* at 174, 288 A. 2d at 924, that reference to a police photograph of a defendant might be harmless error, it is at least doubtful whether this holding survived *Commonwealth v. Allen, supra,* which, after remarking upon "the apparent inconsistencies" of several of this court's decisions regarding police photographs of a defendant, stated a *per se* rule, not that reference to a defendant's photograph is always prejudicial, but that prejudice does arise when the reference is such that "a jury could reasonably conclude" from it that the defendant has a criminal record. *Commonwealth v. Allen, supra* at 181-82, 292 A. 2d at 375. *Cf. United States v. Hines,* 470 F. 2d 225. (3d Cir. 1972), rejecting *Allen* and holding that "the degree of preju-

dice" is to be balanced against "the probative value of the evidence". *United States v. Hines, supra* at 228.

Despite these considerations, the judgments of sentence will be affirmed. At no point during the trial did appellant's counsel object to the Commonwealth's witnesses being asked about the photographs and slides; when asked by the trial judge, after the charge, "Is there anything else?", counsel replied, "Nothing else", and took no exception to the charge (which had referred, in the course of a summary of the evidence, to the photographs and slides); and finally, so far as appears from the opinion of the court below, neither did counsel argue there, in support of the motion for new trial, that reference to the photographs and slides had been error; the first time error was suggested was by counsel appointed to represent appellant before this court. This failure to suggest error in the court below may not be explained by the fact that *Commonwealth v. Allen, supra,* had not been filed, for there were other decisions that might have been cited, *e.g., Commonwealth v. Bruno,* 215 Pa. Superior Ct. 407, 258 A. 2d 666 (1969), and *Commonwealth v. Trowery,* 211 Pa. Superior Ct. 171, 235 A. 2d 171 (1967). As a general rule, such failure precludes appellate review. *Commonwealth v. Bittner,* 441 Pa. 216, 221, 272 A. 2d 484, 487 (1971); *Commonwealth v. Scoleri,* 432 Pa. 571, 579, 248 A. 2d 295, 298-99 (1968). Although an exception to this general rule will be made if there was error that may be characterized as "fundamental", or as so serious "as to result in an unfair trial and a deprivation of justice", *Commonwealth v. Scoleri, supra* at 529, 248 A. 2d at 299; *and see Commonwealth v. Zapata,* 447 Pa. 322, 328 n. 2, 290 A. 2d 114, 117 n. 2 (1972), the error here was not so grave.

It may be granted that to articulate a helpful definition of "fundamental" error is most difficult. Moreover, in this effort cases such as *Commonwealth v.*

*Allen, Commonwealth v. Robinson, Commonwealth v. Bruno,* and *Commonwealth v. Trowery, supra,* are of little or no help, for although in each of those cases the possible prejudice arising from reference to a police photograph of the defendant is discussed, in each the defendant's counsel made timely objection to the reference. Nevertheless, it is apparent that the issues in the present case were limited: there was no dispute that two robberies had occurred; and appellant offered no alibi evidence. Thus appellant's counsel's only hope would seem to have been that he would be able to show by cross-examination that there was a reasonable doubt with respect to the identification of appellant as the robber. It is possible that in planning this cross-examination counsel did not know of *Commonwealth v. Bruno* and *Commonwealth v. Trowery, supra,* and that this ignorance explains counsel's failure to object to the Commonwealth's questions on direct examination regarding the police photographs and slides. If this was the case, it would seem to present a case not of fundamental error but of incompetent counsel, with the result that relief would be available only under the Post Conviction Hearing Act of January 25, 1966, P. L. (1965) 1580, §3(6), 19 P.S. §1180-3(b). However this may be, and recognizing that the concepts of "fundamental error" and "incompetent counsel" may overlap, we cannot assume that counsel was ignorant of the law. Particularly is this so when, as in the present case, the record suggests that counsel may have deliberately refrained from objecting to the references to the police photographs and slides. If he had successfully objected to the references, still his client would have been confronted with positive identification testimony, including testimony that identification was made at a line-up. Counsel may have concluded, therefore, that his best hope was to permit reference to the photographs and slides. Thereby he could point out to the

jury that despite the identification after the first robbery, the detective had made no arrest; from this point counsel could argue, that if the detective doubted the accuracy of the identification, so should the jury, and, further, that the jury should discount the second identification as tainted by the first. Although the arguments to the jury do not appear in the transcript, counsel's cross-examination of the Commonwealth's witnesses is consistent with this strategy. The fact that he was not successful is not by itself a reason to grant a new trial; and although in some cases a trial judge may commit "fundamental" error by permitting a jury to hear evidence that upon timely objection would have been excluded, he will not commit such error if, as here, the failure to object can be reasonably explained.

The judgments of sentence are affirmed.

HOFFMAN, J. concurs in the result.